STATE OF NEBRASKA EX REL.
NEBRASKA STATE BAR ASSOCIATION, RELATOR, V.
MARVIN L. GREEN, RESPONDENT.

317 N.W.2d 97

Filed March 19, 1982. No. 44301.

Paul L. Douglas, Attorney General, for relator.

Kirk E. Naylor, Jr., for respondent.

Heard before MORAN, C.J., HAMILTON, CANIGLIA, WOLF, STANLEY, FUHRMAN, and SPRAGUE, District Judges, members of the special Nebraska Supreme Court.

MORAN, C.J.

This is disciplinary action brought under the rules of this court against the respondent, Marvin L. Green, a lawyer licensed to practice law in this state.

Jurisdiction of this court is derived from a rule adopted by the Supreme Court providing for the appointment of a special Nebraska Supreme Court in the event of disqualification of all the judges of the Supreme Court in any matter pending before the court. An order of disqualification was entered by the court, and pursuant to the rule we were appointed to hear and decide

this case.

Respondent is charged with violation of Canon 1, DR 1-102(A)(1), (3), and (4), and Canon 9, DR 9-101(C), of the Code of Professional Responsibility.

The referee appointed by the court filed his report in which he concluded that respondent had violated those canons; that he had also violated his oath of office as provided in Neb. Rev. Stat. § 7-104 (Reissue 1977); and that he was guilty of violating Neb. Rev. Stat. § 7-106 (Reissue 1977). The referee recommended that respondent be disbarred.

There were no exceptions filed to the report. We afforded the parties an opportunity to submit briefs, but neither requested to do so.

The facts found by the referee are: "1. On June 19, 1959, the Respondent, Marvin L. Green, was admitted to the practice of law in the State of Nebraska, by the Supreme Court of the State of Nebraska.

"2. In approximately July or August of 1979, Respondent, the Court Reporter for the Nebraska Supreme Court, met with Elton L. Bowman, (hereafter called 'Bowman'), Manager of Gant Publishing Company, to discuss the renewal of the company's contract to print the bound volumes of the Nebraska Reports. During that meeting the respondent advised Bowman that he was in a position to guarantee the renewal of Gant Publishing Company's contract and that he would do so if Bowman would pay him the sum of $2,500.00 per volume for each of the three volumes included in the contract. At that time Bowman declined the Respondent's offer.

"3. On or about October 15, 1979, the Respondent telephoned Bowman to discuss completion of the printing of Volume 201 of the Nebraska Reports. The Respondent then asked Bowman if he had reconsidered the Respondent's 'previous offer'. Bowman asked the Respondent if he meant that Bowman give the Respondent 'something under the table to get a contract' to which the Respondent replied 'yes'. Bowman then advised the Re-

spondent that he had not reconsidered the offer and would not do so. The conversation continued, however, and it was finally agreed that the Respondent and Bowman would meet later to continue the discussion in person. Bowman then contacted his brother, Donald Bowman, and advised him of the conversation with the Respondent. Donald Bowman advised Elton Bowman to set up a meeting with the Respondent and that in the meantime he would contact the Attorney General's office.

"4. On the morning of October 16, 1979, the Respondent went to see Bowman at Gant Publishing Company. The Respondent and Bowman went to the alley behind Gant Publishing Company and had a discussion in reference to the contract for printing the Nebraska Reports. Bowman told the Respondent that if the Respondent could guarantee him a contract he would give the Respondent $2,500.00 at that time with further payments to be made upon completion of additional volumes of the Nebraska Reports after a new contract had been signed. The Respondent said that he wanted to think the matter over for a few days. Elton Bowman then went to Donald Bowman's office where he met with Assistant Attorney General, Patrick O'Brien, and informed Mr. O'Brien of his discussions with the Respondent.

"5. At approximately 3:00 p.m. on Thursday, October 18, 1979, the Respondent went to Bowman's office at Gant Publishing Company and asked Bowman if he wanted to buy some silver. The Respondent said that he had some silver bars which he would like to sell to Bowman which he thought would be worth approximately $2,500.00 to Bowman but which would be worth approximately $700.00 to anyone else. The Respondent and Bowman agreed to meet the following afternoon at approximately 3:00 p.m. After the Respondent left, Bowman called Mr. O'Brien and Donald Bowman to advise them of the Respondent's visit.

"6. At approximately 4:30 p.m. on Friday, October

19, 1979, the Respondent parked his 1968 Chevrolet in the parking area behind Gant Publishing Company and entered the building through a rear door. The Respondent and Bowman then left the building through the front door and walked west on "N" Street for a short time then turned back and walked to the Respondent's car at the rear of Gant Publishing Company. After arriving at the car Bowman gave the Respondent the sum of $2,500.00 in cash. The Respondent then got into his car, placed the money in the glove compartment and started to back out of the parking place. At that time the Respondent was stopped by Officers of the Nebraska State Patrol and placed under arrest.

"7. Prior to the meeting at 4:30 p.m. on October 19, 1979, Bowman had been equipped with an electronic transmitting device. The conversation between Bowman and Respondent was tape recorded by means of a tape recorder in a car parked nearby by the Nebraska State Patrol. A copy of the transcript of that conversation is Exhibit #7, and has been received in evidence by the Referee."

The transcript discloses that respondent fully appreciated the ethical impropriety and possible consequences of his acts.

The conduct of the respondent warrants disbarment under doctrines announced in prior cases. See, *State ex rel. Sorensen v. Scoville*, 123 Neb. 457, 243 N.W. 269 (1932); *State ex rel. Nebraska State Bar Association v. Walsh*, 206 Neb. 737, 294 N.W.2d 873 (1980).

The referee's conclusions are worthy of note: "This is not a case where an ethical violation occurred because the offending attorney was inexperienced, inept, unknowing or overzealous. The Respondent, admitted to practice for over twenty years, deliberately set upon a course of action that he knew to be ethically wrong. For an attorney to deliberately perform an act which could undermine public confidence in our judicial system is reprehensible. For an attorney who is an employee of the State's highest court to do so warrants disbarment.

I so recommend." We adopt his conclusions as our own and enter such an order.

JUDGMENT OF DISBARMENT.